24-2947 Johnny Savory v. Allen Andrews et al. And we'll begin with oral argument Mr. Sotos from you. Thank you your honor. Counsel. May it please the court. Good morning. This up a little bit. My name is Tom Sotos. I represent the defendant's appellants in this matter. I would like to reserve five minutes for rebuttal. Thank you. Today we are asking the court to reverse the lower court's denial of summary judgment on four of plaintiff's claims specifically the denial of absolute immunity on plaintiff's fabricated confession claim stemming from his 1977 criminal trial and the denials of qualified immunity on plaintiff's claims for destruction of evidence coercive infection and unlawful detention. Why don't you begin with appellate jurisdiction. Yeah absolutely. So luckily that's what I've got written down here judge. The bulk of plaintiff's brief as you know is not about merits it's about jurisdiction. I think the majority of this argument can be cut through with some expediency if you just look at the actual defenses to the claims themselves. It's our position that specifically three of the immunity defenses on appeal might clearly arise out of exclusively undisputed facts and those are very easy claims to resolve jurisdictionally. Those are the immunity defenses to the destruction and fabrication claims which have extremely narrow factual predicates. Those are undisputed factual predicates. And then there's the coerced confession claim. That claim requires us to accept all of plaintiff's allegations about his interrogation tactics. He was present for his interrogation so all of the facts that we have brought up on appeal we are accepting his version of events. Our immunity defense simply asks whether those tactics violated clearly established law in 1977. As we see it the only superficial factual issue and I emphasize superficial comes from our qualified immunity defense to the unlawful detention claim and specifically to our contention that six witness statements contribute to arguable probable cause. Plaintiff claims and the lower court did find that because plaintiff alleges that the six witnesses statements to officers must have been fabricated he is entitled to that inference even though his evidence is only evidence for that allegation is his denial that he made inculpatory statements to the witnesses in the first instance. But that lower court finding that does not arise out of a dispute of fact. We accept and we have always accepted for summary purposes that plaintiff is denied making inculpatory statements to the witnesses and we accept that plaintiff that the in plaintiff's version of events the officers based on that denial he's entitled to the inference that the officers fabricated those witness statements but the granting plaintiff that inference at the summary judgment stage that defies probable cause it's a very narrow legal issue it does not actually arise out of a dispute in evidence. The key case here is Coleman versus city of Peoria that's a 2019 case this is talked about in our brief. There this court doubled down on a long line of cases holding that absent evidence showing that officers at the time of their investigation have reason to doubt the reliability of third party witness statements. Officers are entitled to rely on those witnesses statements for probable cause in the face of a suspect's denials. But isn't the argument here though a little bit different at least the way I saw it Coleman is not a Coleman is not an interlocutory appeal I think Coleman but isn't isn't the the question here I the way at least I see the plaintiff's argument is that he's alleging that the police officers knew at the time they were determining probable cause that the witnesses statements were fabricated which distinguishes this case from Coleman I think or the argument that you just made. I appreciate and agree with the distinction about the procedural posture in the case. In addition what you said about the allegation is true plaintiff is alleging that but summary judgment law federal rules of evidence and law governing probable cause are exceedingly clear on this an allegation alone is insufficient to summary judgment regardless of the circumstances even when the district court though found that there was a dispute of fact we believe that there are two ways for the court to address this we believe because the court's finding on that issue arises out of a clear error of probable cause law that is an abstract issue of law this court can can adjudicate solely based on the law itself the granting of savory the granting of plaintiff the inference on the unlawful detention claim about the six witness statements comes from a misunderstanding of the way that officers are entitled to rely on information they receive at the time for probable cause purposes the only evidence in this case of any i hesitate to call it doubt but granting plaintiff those kinds of inferences unreliability of a witness statement doubt the witness statement the only actual evidence of that comes from 1981 four years after the investigations the only basis to find any sort of disputed factor and inference or to withhold these statements from the police officers purview in the probable context probable cause context is to simply permit plaintiff to say that the officers fabricated the statement that is speculation and the district court held this in the context of the 1981 fabricated uh evidence but my question though is once the district court says that there's a dispute of material fact on that issue what's our jurisdiction to review that our first answer would be that you can step in because it's an abstract issue of law on the probable cause the error comes from the law it comes from public cause law however accepting the premise that this is a dispute why can't we fix that okay so you're saying there's an error the way the district court determined the way probable cause is analyzed why can't we fix that what does that have to do with the district court's determination that there was a dispute of cases the court is held if we accept plaintiff's version of the facts even allowing for a lower court finding of disputed fact this court can address the abstract issues and my representation here is that we are accepting that savory is saying what he's saying what our argument is one step past it but but don't you have to accept though if you're going to accept that don't you have to accept that the witnesses statements were fabricated and that the police officers knew it in 1977 we hold on one second absolutely you you you accept the fact that the police officer statements were fabricated i'm sorry the witnesses statements were fabricated the police knew it 1977 but then you argue that there's still probable cause even throwing out the witnesses statements yeah i understand the proposition um in the interest of time we do not believe that we have to accept that there is a dispute of fact about whether the statements themselves were fabricated in 1977 because there was no evidence to back that up and the finding of disputed fact arose out of a misapplication of problem what's your best case what's your best case to support that argument for interlocutory jurisdiction that argument flows from the theory that this court has jurisdiction to address abstract issues of law at the at the interlocutory stage we do not have a specific case address however granting the proposition that there was a finding of disputed fact by the lower court which theoretically should impede interlocutory jurisdiction accepting that as the premise and i understand district court did find that here in johnson versus jones the case that kind of sets the groundwork for all of these interlocutory appeals the supreme court specifically anticipated instances where district court findings of fact would be insufficient and the seventh circuit and any other circuit would have to take on a greater burden it did not say it would happen frequently but it said it would have to happen now the second now the supreme court said in johnson versus jones that the instance they anticipated was where a district court failed to give the court findings of fact that they could use for the interlocutor appeal so the court of appeals would have to go down and make their own findings of that however since johnson versus jones a number of circuits have have taken that holding they've also looked at scott versus harris and they have found that where a district court's findings of fact are inadequate this this this language in particular comes from taffy versus wenger this is a 11 circuits a federal appendix opinion but it uses a surfeit of 11 circuit case where district court's findings of fact are inadequate johnson versus jones permits the courts of appeals to go in and take their own look at the facts to make sure that there are genuine disputes in jeffers versus gomez this is the ninth circuit case the ninth circuit specifically found that district court findings of fact that are based on allegations of disputed fact that are based on allegations as opposed to genuine evidence are insufficient to deny jurisdiction for interlocutory appeal we would direct the court to those cases we would suggest that if the court were to go the other way there is a risk of intercircuit split on that issue i would remind the court again we believe that the court can address this issue narrowly and clearly as a matter of arguable probable cause and probable cause law because the error arose a matter of law the district court misapplied u.s versus williams it failed to observe colman versus city of peory and its progeny that's brominos that's reynolds and the error flows from that however the court wants to wait for the facts we believe the court has the jurisdiction to do that fountain versus jones allows that it specifically says the court can do that in specific instances beyond that briefly to try to tie up the jurisdictional issue the absolute immunity defense the fabricated confession claim there's one fact there it's undisputed the fabric the allegedly fabricated confession was only introduced at the 1977 trial by officer testimony that is undisputed it's the only fact giving rise to that defense jurisdiction is clear is it introduced in the second trial it wasn't we did not raise the defense with the second trial because there are some lower court decisions that suggest where the police report is used absolute immunity is not available the police report in the second trial 1981 it was used for fresh recollection it was referenced in the 1977 trial played no role that's why we raised it there for the for the destruction of evidence claim again very narrow factual predicate we accept that the evidence was in 1977 that's the only evidence that's the only time in the record where the evidence goes missing we uh we accept that the officers implicated did it and the parties agree dna testing did not exist for quite some time those are undisputed facts on the co-risk confession claim again we have to accept all where have you seen the record are you getting that the evidence was destroyed in 1977 i appreciate the questions that jack and it's been somewhat difficult for defendants to reduce this it is the only we argued in lower court that there is no evidence of destruction in and of itself the lower court rejected that marriage finding would remain a little bit unclear why the only evidence in the record of the evidence going missing and the last time it was in contact with any of the peoria police department officers is 1977 there are two police reports from september of 1997 i can get the office of 97 i can get the the docket sites for you that mentioned cannon and jack housey in the context of destruction and then at trial i believe it was jack house it might have been non-defendant gonzowski who mentioned that they couldn't the cutout wasn't around anymore and they couldn't find the hair just 77 that was in 1977 after 1977 there's no tethering of the officers to the evidence there's any any allegation of destruction post 1977 is purely an allegation there's no evidence of that i would like to reserve the remainder of my time i may very good thank you mr soto you're on miss miss pierce will you you should be able to lower derek can help you a little bit shorter than my opposing counsel in my last argument in this court before i became a judge i hit the button it went down the person who had to argue after me was very upset with me i'll do it too all right we have a disabled judge oh sorry okay all right miss pierce good morning your honors morning please the court uh defendants misrepresent the law in this jurisdiction and from the supreme court um about when the court has jurisdiction over an interlocutory appeal this circuit has been clear that this court may not consider the district court's determinations about sufficiency of the evidence and this court has been clear um that the the defendants must take all evidence in mr savory's favor on your um interlocutory appeal they have to um uh argue that they can that this is a a legal uh question because their whole appeal is about is challenging the facts that the district court on summary judgment miss pierce can i ask you a question regarding that um the appellate jurisdiction issue if the district court uh you know take the fabrication of the witnesses statements if the the district court the defendants offer the witnesses statements and say in 1977 based on the witnesses statements there was a uh the police had at least arguable probable cause and the the plaintiff's only response to that is i deny that fact and i submit that the statements were fabricated and there's no evidence whatsoever to support the argument or the position that the statements were fabricated if the district court was determining that at summary judgment usually the district court would disregard that bald denial and accept the defendant's fact that they relied upon the plaintiff's statements but if the district court accepted the plaintiff's denial and said i'm going to accept that okay and i'm going to find a dispute a material fact on that issue is there appellate jurisdiction to review that in the qualified immunity context no your honor there is no uh jurisdiction what case supports that proposition what's your best case to say that there is no appellate jurisdiction even if the district court erred in determining that there was a dispute a material fact yes your honor i think there are a number of of cases um there is uh johnson uh um johnson v jones from the supreme court that says uh determinations about sufficiency of the evidence um cannot be reviewed on interlocutory appeal um and then a multitude of cases from um this circuit as well there is but sufficiency the evidence is a little bit different yes your honor but in that case the district may take a very simple example there's you know plaintiff says the light was red okay defendant says the light was red district court says i find a dispute a material fact on that issue there clearly isn't both sides agree okay but the district court says i find a dispute a material fact one side appeals and says the district court clearly made an error in determining that there was a dispute a material fact do we have jurisdiction to review that error so i think there is a scott v harris has identified a very narrow circumstance in which there is incontrovertible evidence in the record that um directly contradicts the video evidence yeah and in that case it is video evidence that is a very narrow circumstance and we do not have to decide exactly where that ends because that is absolutely not the case that we have here and defendants have said that we are that um mr savories uh did not um have presented no evidence that he's relying on mere allegations that these um statements were um fabricated but that is that is not true there is ample evidence in the record both at these um that these uh statements were fabricated and even if this court did credit them that they were the defendants knew that they were completely and wholly unreliable and if the court will indulge me i'll get into a little bit of that evidence here um there uh ella ivy is one one of the individuals whose statements they rely on she testified later during post-conviction proceedings where she directly denied that she ever made those statements to defendants again mr savory has said that he never made these statements to any of these witnesses he also denied making statements that defendants attributed to him and put in their reports witnesses who they are not relying on here they wrote reports in which they um said that she made different uh various statements that again she denied saying um at a deposition uh tina ivy later said that mr savory never made these statements to her um if we look at um i guess are you tying that to the police officer's knowledge of 1977 we see cases all the time where witnesses come in five ten two eight years later and say i made those statements that's not true i knew it was not true at the time that happens all the time ella ivy said she never made these statements to the defendant in 1977 and then if you look at ray mason's um statements he is questioned on five separate times four of times the first two and the second and the last two he denies that he ever had any conversation with johnny lee savory about these murders and that he knows anything about these murders there is one single report from defendant canon in which he says that ray mason told him on the morning of the murders johnny lee savory called him and told him that his friends were dead um he denies repeatedly making this and then other officers called his uncle and confirmed that he was actually with his uncle the entire day from early in the morning until late in the evening and could not have received a call from johnny lee savory and then when these officers went and wrote that they verified with him that this call in fact never made sense they wrote in their report that they verified the call never happened this um ray mason told them that he was confused by canon's accusations and his tone there is ample evidence in the record both that these statements were never made and that the defendants knew that they were completely and wholly unreliable because after this they never used these statements they never called these witnesses to testify and they never brought them to trial because they knew these were not real statements there was no probable cause here what's length of the what's the period of illegal detention that you're claiming damages for here from the time of his indictment until um he uh is convicted at his first trial i believe is the the time period okay so it's just the the few months i don't remember exactly what the time period is but the time that he was detained i guess in jail until the time of the subject on the coerced confession what you cited a litany of cases in the red brief on coerced confessions and what what's your best case regarding the facts here that the police are i mean you're citing cases where an individual is deprived without sleep for 48 hours i mean i'm making this stuff up but some of these cases are so wildly unanalogous to the situation here what case should we look to as your best case for clearly established law in 1977 that the police officers knew what they were doing was unconstitutional yes your honor i believe that the two strongest cases here that um just if we want to look at a single case arc uh haley and gallegos but i also want to uh reiterate that um what is required here is not one single case that is directly on point with all the same circumstances and all the same tactics used this has never been required um by uh qualified immunity right i understand i understand okay but it's hard to say i mean it's hard to say a situation where um a defendant was you know a criminal defendant was not fed for 48 hours is analogous to a situation where a subject who's interior is fed for lunch and that's what i i just see the red beaters trying to stretch from you know well he this person was deprived of sleep for 48 hours and mr savin only got six and a half hours of sleep so we can extrapolate from the 48 hours plus the hamburger plus the fact that he was 14 plus the fact that he only got to meet with his father for a short period of time we can extrapolate from all these other cases and say that what happened here was clearly unconstitutional that's what i think you're trying to do but maybe i'm wrong i i think um your honor is is looking at a little bit too uh detailed level of specificity again this is this is not required here what is required um under tolan is bare notice um the the just the courts have said for a long time that we must look at totality of the circumstances um and of course there is never going to be a a case with exactly the same circumstances and the exactly the same tactics used that does not mean that defendants are not on notice um that the tactics they are using are are coercive um the supreme court has repeatedly provided guideposts that let defendants know what let officers know when their conduct is getting out of bounds and then here um hayley and um gallegos are particularly on point and these courts go into detail describing exactly why a 14 year old like johnny lee savory is unable to match um the power of the law when multiple officers are up there interrogating him over 30 days um and and teams of uh in teams um asking him confusing rapid fire overlapping questions um and here in this case um hayley talks about an individual a 14 year old who was um interrogated from 12 12 12 a.m until 5 in the morning just five hours much less than a supportive adult figure just like mr savory here um and he uh um was um uh and and there are factors and those are the factors there and hayley that the supreme court said this has made this um uh this interrogation coercive and unconstitutional um and hayley put defendants on on notice here um in our case there are additional factors that make this um not just more coercive than hayley and gallegos um but um obviously coercive and unconstitutional the um the officers here mr savory told them that he no longer wished to speak to them to him they made it clear that he could not end this interrogation they brought him back and they continued to question him um your honor has spoken about um whether it matters if an individual is deprived is given lunch one day or not provided food for 48 hours the district court found here that mr savory was provided um that the that mr savory was denied adequate food over two days he was given a candy bar and a hamburger um this weakened him and and made it more likely that his will would be overcome and defendants knew this and they did multiple things to render mr savory totally hopeless they um they uh told him that he could go home if he uh took a polygraph exam then they subjected him to two separate polygraph exams that they knew had no valuable basis and then falsely told him that the polygraph exam results um implicated him in the murders they took him to the bathroom where they stripped him down naked and forcibly pulled hairs from his body um they did not pry to him with any adult advocate his father came at one point um and they were unable to communicate and yelled at him and left him more susceptible to the pressures of the officers here um and then left he had no about a friendly adult with him at any point during the interrogation and he was interrogated more or less continuously over 30 hours except for six hours where he was left at a detention center um to sleep on a thin mattress for less than six hours he was on shift to asking you about um just one defendant uh it's the hours yes um because the supreme court has we have to consider qualified immunity defenses based on each officer's conduct and um you know we have this case law that what bowers did at the end of his interrogation he was all in mr savory's face and accusing him of being a murderer etc etc um and he did not at the time there is some evidence um have knowledge of what the officers before him had done um should that lead us to conclude that bowers alone is specifically entitled to qualified immunity um what do you say about bowers um the district court found that mr bowers was involved in a conspiracy to uh obtain a false confession um from mr savory um there is evidence in the record that supports that mr bowers was aware he was briefed by defendant tablets about what had happened earlier in the interrogation he was a former police officer who had worked closely with his officers and he was present at the police station a jury at this must go to a jury to decide exactly what role mr bowers had in this um interrogation but a jury could conclude that he was aware of and was acting with um together with the other defendants um to uh interrogate mr savory does your answer um flow because there is the presence of the conspiracy charge or even if there wasn't the presence of the conspiracy charge um we should still find that bowers is not entitled to qualified immunity i think even without the conspiracy there is evidence that he was aware and was working as part of this um as part of this team to interrogate him but i think those go hand in hand with the conspiracy i'm not quite sure if they're separable um so i believe here there are no uh distinguishing factors um that there are no case and hailing gallegos and then there were multiple additional uh factors that have been clearly identified as coercive um yes the court still has to consider the totality of the circumstances and yes the officers have to continue consider the totality of the circumstances um but under these totality of the circumstances the officers were on bare notice that they were violating mr savory's constitutional rights um i'll say briefly with regard to the destruction of evidence um that is premised completely on a dispute of fact here um mr savory the district court found that there was evidence that defendants would have been aware of the exculpatory value of the evidence um one that there was no blood on the pants and two um that the hairs were um the defendants themselves through their probable cause arguments are arguing that the hairs were pot were can be implicate are able to implicate um the the perpetrator of those claims only arise though in 2013 uh no um that claim arises when he could abuse the um at any point that he could have used the evidence um did he ever ask to you i mean in other words what i'm troubled by is it let's assume the evidence was destroyed in 1977 what difference does that make if nobody asked to make use of the evidence until 2013 i think i don't think it makes a difference because at that point he was deprived of his ability to test the evidence which would have been but he never asked to test the evidence i mean that that's suggesting wow i mean that is such a broad statement because what i mean police get rid of evidence all the time and clearly in 1977 there was no established case law that said they have to keep all evidence forever that's correct your honor but the law does say that they have to maintain potentially exculpatory evidence and that they cannot destroy it in bad faith here they're not defendants are not disputing that they acted in bad faith for good reason there's ample evidence that they acted in bad faith in this case and the potential uh exculpatory evidence uh value of the evidence was more than apparent um plaintiff has argued that defendants fabricated that there was blood on the pocket of the pants this was not challenged at summary judgment that claim will go to trial and but not in 1977 yes yes your honor the plaintiff is is no no no in 1977 the plaintiff asked for the pants and the police said we can't find them no i don't think those are the facts right i think in 2013 i think around then the plaintiff asked to have dna testing on the blood because he said it would exonerate him and the police said we don't have it and so the purposes of our analysis we have to assume that they didn't have it as of 1977 but there's no evidence of that the evidence was destroyed and that has to be accepted mr savery i understand that and mr savery could have used the pants at any point in including in 2013 2013 ever asked to use the pants before 2013 not that i'm aware of and not in the record but in 2013 he asked to test the pants and he would have been able to show that there was in fact no blood on the pants i got it but if we accept that argument don't we have to accept that the police had to keep the evidence from 1977 until 2013 anticipating the dna testing would be available at some future point and then perhaps he would be exonerated i don't think they would have had to anticipate that dna testing would have been available because just the testing to show that there was no blood on the pants would have been exonerating of johnny lee savery okay but is it your contention that the police knew in 1977 that they had to keep the pants for 50 years they they did know that they had to preserve that uh the pants and they did know that they could not destroy them um in bad faith well your policy here i believe required them to forget their policy i'm talking about the united states constitution sure i think they have to preserve it in perpetuity i believe in perpetuity okay that that's what i thought your argument wasn't i don't think there was anything 1977 that would require police officers to keep evidence in perpetuity but i might be wrong um and if i understand your argument your argument is there was testing available in 1977 that could have just shown there was no blood on the pants and that is what could have been available to mr savery yes your honor yes sir and do you agree with um the defendant's lawyers that they're asking us to make an inference that the evidence was destroyed in 1977 um i don't think it matters whether the evidence was destroyed in 1977 or at some point in between um but um i don't think it matters here thank you miss pierce this is so close we'll move to you now for a bottle argument thank you i'm gonna briefly try to supply the court with some items that it asked for throughout the argument uh johnson versus jones this is what quote occasionally requires a detailed evidence-based review of the record um i think that this case if you look at taffy versus one group this is the kind of case where that um that edict might apply uh again we have tried to argue why our probable cause law settles the issue but between johnson versus jones and scott versus harris and the way that the sixth circuit uh interpreted those in rodriguez this is in our brief the way the 11th circuit interpreted them in taffy we think that that sets a nice framework for analysis of an inadequate finding fact in this case um the september 1977 ports judge jackson akumi um akumi the those are dockets 320-39 and 320-40 uh the the notion that the the destroyed evidence could have been destroyed at any time and we don't need to time stamp that that belies the test for destruction of evidence and destruction of evidence test from youngblood from trombetta specifically says that we need to know about exculpatory value whether the officers knew of exculpatory value at the time of destruction the only evidence in the record of when these items went missing comes from 1977 there's some discussion in the trial record about these items being being missing in 1977 the test requires us for qualified immunity purposes we are just trying to see if the officers had a duty to preserve from that point on there was quite a bit of discussion about the fabrication the the witness statements themselves ella ivy maintained in this case in her deposition testimony that the statements we rely on that are in our brief that we provided the court were truthful i sympathize with opposing counsel our lawyers the court this is an unwieldy record this is a very difficult record it is extensive it is expansive it is it is old which its own issues however we lay this out in our brief one of the concerns with simply deferring to factual presumptions made is that you lose the the genuine viability of an entitlement to immunity in a messy record this is the reason why the federal direction allows me to be here there are defendants in this case there are some claims that are going to go to trial against some defense there are other defendants in this case if qualified immunity is resolved in their favor they are out of the case if the cohort's confession claim goes away sergeant andrews is likely out of the case because he's only on a failure to intervene claim in the cohort's confession if sergeant bowers is found qualified qualifiedly immune we have significant doubts about the viability of the conspiracy claim against him in the lower court um mr jack kowski we emphasize the individuality of bowers actions in the brief we think sergeant jack kowski deserves a particularly strong look about the constitutionality of his tactics in the course confession case uh all he did was essentially get evidence from mr savory's person he wasn't involved in any of the questioning to me that sort if that claim is resolved in his favor he is very likely to be out of the case indeed miss teplitz may well be out of the case we don't believe that she's part of the 1981 fabricated confession plan if these claims are resolved in her favor so this is a long way of saying the qualified immunity doctrine and absolute immunity in some ways the purpose of it is to resolve claims that are not viable for which officers did not have fair notice before trial before they have to face a trial and i appreciate that the seventh circuit has some case law saying that we defer to the district court's findings in fact however over deference over indulgence of a messy record it deprives entitled defendants to immunity that the supreme court has held for decades they are due where there is not clearly established law there will be a trial some of jury but some defendants can be out of the case now that the court will exercise jurisdiction and rule in their favor so for the reasons articulated in our briefs we would ask the court to reverse the four uh denials of immunity in this case um and for those defendants who shouldn't go to trial i'll let them be done thank you thank you mr sotos thank you miss pierce the case will be taken under revision